PARSONS, executor, etc., v. BEST, executrix, etc., *et al.*

*Construction of will.*

1T&0211
51ad 12

A will contained the following: " 2. I give and bequeath unto my wife all my real estate, to have and to hold the same, to her and to her heirs and assigns forever, subject, however, to a distribution of the same among all my children, in her discretion, and when she may deem proper so to do. 3. I give and bequeath also to my wife, all my personal property, which, together with my said real estate hereinbefore devised to her, shall be by her used, and appropriated by her to the use of all my children, in such portions and at such time or times as she shall adjudge most practicable ; but she to make no appropriation of my said property to deprive my children thereof, and, also, to divide the same among them, in her discretion, when she may deem proper."

*Held,* that the wife took the whole in fee.

SUBMISSION, pursuant to section 372 of the Code. The case was this: The plaintiff, a resident of Sharon, Schoharie county, is the executor of the last will and testament of Jacob Shaul, late of Sharon, Schoharie county, deceased.

The defendants are residents of Sharon, Schoharie county, and defendant Mary Best is the executrix of the last will and testament of Charles Best, late of Sharon, Schoharie county, deceased, and is the widow of the said Charles Best, deceased, and the daughter of Jacob Shaul, deceased.

The defendants Irvin Best, Martha Best, Alice Best and Ida Best are heirs at law of the said Charles Best, deceased.

Charles Best died in Sharon on or about the 25th day of March, 1861, leaving him surviving a widow and four infant children.

Also a last will and testament relating to both real and personal estate, which will has been duly admitted to probate, and recorded in Schoharie county.

So much of the said will as becomes important to examine is as follows:

*Second.* I give and bequeath to my well-beloved and faithful wife Mary, all my real estate or farm on which I now reside, situate in Sharon aforesaid, bounded on the north by lands of Willard Hitchman, on the east by lands of Nicholas Van Buren and lands of John I. Empie, on the south by lands of Jacob Vrooman and lands of David Eldredge, and on the west by lands of David Eldredge,

with all its appurtenances, to have and to hold the same to her, and to her heirs and assigns forever; subject, however, to a distribution of the same among all my children, in her discretion, and when she may deem proper so to do.

*Third.* I give and bequeath also to my well-beloved wife Mary, all my personal property of which I may be possessed, which, together with my said real estate hereinbefore devised to her, shall be by her used, and appropriated by her to the use of all my children, in such portions, and at such time or times as she shall adjudge most practicable; but she to make no appropriation of my said property to deprive my children thereof, and also to divide the same among them, in her discretion, when she may deem proper.

And lastly, I hereby appoint my well-beloved wife Mary, executrix, and my worthy friend and brother, Israel Shaul, executor of this my last will and testament, hereby revoking all former wills by me made.

P. POTTER, J. The case itself does not present the points which the parties desire to have decided; and no briefs are presented by counsel. We learn, from the oral statement of the plaintiff's counsel, that the parties desire judicial construction of the will, upon the question of title to the property devised and bequeathed in the second and third clauses of the will.

It is very clear that the draftsman of this will was unskilled in that department of transferring estates, from the use of terms he has employed; this fact is ever to be considered in giving wills construction. In wills especially, above all other instruments, the *intent* of the testator, when it can be ascertained, is the controlling rule by which to interpret them. This intent, generally, is to be taken from the language employed, and therefore courts feel bound to give effect to every word of the will, without change or rejection, provided effect can be given to every part, not inconsistent with the general intent of the whole will taken together. In order, therefore, to prevent what appears to be conflicting, or contrary parts of a will from neutralizing or destroying each other, it is an established rule of construction, that where two clauses in a will seem to be repugnant or irreconcilable, that the latest clause shall prevail, as being the last and best-considered expression of intention. This rule applies as well to devises of real estate, as to bequests or gifts of personal.

But to make this latter rule applicable, the latter words must be clearly *repugnant* and *irreconcilable;* not merely inferentially or argumentatively repugnant. A devise or bequest made in clear, positive and express terms, in language known to the law, and which calls for no interpretation, is not controlled or overcome by subsequent ambiguous words, inferentially to another intent. In the second clause of this will the testator has employed the proper technical words to convey to his wife Mary, an absolute estate in fee, in the property described. The legal presumption, to begin with, is, that these words were employed in their legal sense. It was a conveyance to her, her heirs and assigns, an estate in fee. By no subsequent clause of the will, is this estate devised to any one else. The second branch of this clause, " subject, however, to a distribution of the same among all my children, in her discretion, and when she may deem proper to do so," has no effect to limit or qualify her title. It can be regarded as only the expression of a wish, that in the exercise of a discretion, entirely consistent with the devise, that *his* children may be permitted to enjoy the estate from her, when, in her discretion, she shall determine to make distribution. The word " subject " does not control the preceding devise, but is controlled by the positive language which precedes it, and the qualification of it, by the " discretion " which follows it. It is in nowise repugnant to, or irreconcilable with, the preceding words of the devise.

But it is claimed that, notwithstanding the devise of an estate in fee, to the widow, in the second clause of the will, the provisions of the third clause are so repugnant and irreconcilable therewith, that the latter qualifies and controls the language of the former. This presents a question to be determined, if it may be, by rules of construction that have been settled by adjudications. One rule is, that an express and positive devise cannot be controlled, either by subsequent words of implication, or of ambiguity, or by inference or argument from other parts of the will. *Collet* v. *Lawrence,* 1 Ves. 269; *Jones* v. *Colbeck,* 8 id. 42. Another rule is, as above stated, that there must be an actual disposition or gift of the same property for some other definite object, or to some other person, to defeat an express and clear devise, made in ·appropriate terms ; that mere negative words will not do. 1 Jarm. on Wills, 294. For instance, a declaration in a will, that a devise or bequest shall not lapse, does not *per se* prevent it from failing by the death of the object, in the

testator's life-time, since negative words do not amount to a gift, and the only mode of excluding the title to whomsoever the law casts the property, is to give it to some one else. Id.

It is true, that there are words in the third clause of the will, of strong implication, that the testator intended that all his children should have a division of the estate, notwithstanding the devise and bequest to his wife; but also in terms clearly excluding the idea that it was to be an *equal* division. It was to be "in such portions as his wife should adjudge most practicable." The whole control of the estate, in this particular, was given to the wife. So, too, the time when to make division was to be at her discretion. She was given, by this view, her life-time in which to exercise the power. Neither of the children had any claim during her life that could be enforced: first, because it would not be due by any claimed construction; and second, because neither had any specific portion that could be called his or her own.

But suppose she died without making any divisions: by what language in the will could the children take the estate, and in what proportions?

Again, if this ambiguous language, in the third clause, is to be given the force claimed, then the widow had no portion of the estate, real or personal, that she could use, notwithstanding the devise or bequest. It declares that *all* the real estate devised to her, and *all* the personal estate bequeathed to her, "*shall be by her used and appropriated to the use of all my children*," giving to his wife only the choice of time, and discretion as to the proportions, in which she shall divide it; "but she to make no appropriation of my said property to deprive my children thereof." To give this language full literal force, she could not appropriate it to her own use or support.

To give such construction would be a violation of that rule, that all parts of a will are to be construed in relation to each other, and, so, if possible, to form one consistent whole. The words of the devise in the second clause, and of the bequest in the third clause, are appropriate technical words, and the presumption must be, that they were intended to be employed in their legal sense, in the absence of a clear devise or bequest to the contrary. To fail to give them this effect, would be a violation of another rule, which requires that the courts in their construction give to every expression some effect, rather than one that will render any of the expressions inop-

erative; and, also, that where two claims for construction are made upon the use of the same language, that is to be preferred which will prevent intestacy.

It is not in the power of courts to make consistent all the terms of wills, drawn by a class of bungling scriveners, who seldom express the intent of the testator, for want of knowledge of the use of the terms they employ, but this is an evil that has no cure; and courts must ever struggle with this condition of things.

If I am right in my views of construction, the devise and bequest of the estate was to the widow in fee; there is no power to control her use of it during life. Judgment should be entered in her favor in pursuance of these views.

MILLER, P. J., and DANIELS, J., concurred in the opinion.

*Judgment accordingly.*